UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2018 JUN 22 P 2:07
US DISTRICT COURT
BRIDGEPORT CT

JEFFREY MILLER

Plaintiff,

v.

ADRIENNE MILLER,

Defendant.

No. 3:18CV1067JCH

# COMPLAINT

1. Plaintiff Jeffrey Miller brings this action against Adrienne Miller for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution.

# THE PARTIES

2. Plaintiff Jeffrey Miller is a resident of New Orleans, Louisiana and operates a business, Pulp and Paper, LLC, that is headquartered in Louisiana.

3. Defendant Adrienne Miller, Plaintiff's sister, is a resident of Connecticut currently residing in Wilton, Connecticut.

# JURISDICTION

4. Plaintiff brings this complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

# FACTUAL ALLEGATIONS

5. From November 19, 1999 to May 25, 2016, Plaintiff was the primary caregiver for Nancy Miller, Plaintiff and Defendant's mother ("the mother").

6. In January 2013, after a 13-year break in communication with the family, Defendant – who

suffers from severe alcoholism and abuses a number of other illegal drugs – suddenly re-emerged.

7. Defendant had no income and little if any savings. Accordingly, Plaintiff provided financial support to her and allowed her to use his car.

8. Plaintiff's mother, who was living in Wilton, Connecticut, allowed Defendant to live rent-free in a luxury condominium they owned in Danbury, Connecticut.

9. Defendant displayed bizarre behavior from the moment she returned to Danbury, Connecticut. On one occasion, she threw paint at workers who had come to work on the house. On another occasion, she came to the Wilton house – evidently intoxicated on something other than alcohol – and demanded Plaintiff's credit card, stating cryptically, "they're after me and I'm going to sleep in a hotel parking lot." Plaintiff convinced Defendant to sleep in their residence on Indian Hill Road. The next morning, she loaded the truck full of the family's belongings from the house, and disappeared.

10. In March 2015, Plaintiff confronted Defendant about a $3,000 loan she had taken from the mother's bank account and not repaid.

11. In April 2015, Plaintiff witnessed Defendant running her hands through their mother's hair, commenting on how "pretty" she was, and demanding: "give me $2,500 or I'll be homeless and on food stamps."

12. During this time, Defendant repeatedly called and threatened Plaintiff, stating that he was a "low life and a thief" and that the "authorities know who you [Plaintiff] are and are going to arrest you."

13. From November 2015 to June 2016, numerous items disappeared during my absences from the family home in Wilton, Connecticut, including: $15,000-$20,000 worth of jewelry; $3,000 worth of antique silverware; an old camera; $5,000-$10,000 worth of vinyl; and several items of the mother's formal dress ware.

14. Around this time, after Plaintiff began confronting Defendant about the missing items and her manipulation of their mother, Defendant began making false accusations against Plaintiff.

15. In November 2015, Defendant called state social services and accused Plaintiff of "neglect and abuse" of an elderly citizen. Social services never opened a case.

16. In January 2016, after Plaintiff confronted Defendant upon learning that she had cajoled the mother into giving her $13,000 in cash and trying to open up a joint bank account, Defendant became furious and filed false assault and attempted strangulation charges against him.

17. In or around May 2016, Plaintiff received a called from the Wilton Police Department informing him that his sister had accused him of stealing jewelry and silverware from his mother, and harassment. The police officer informed Plaintiff that if he returned to the property in Wilton, Connecticut – a place he had lived for more than 40 years prior to relocating to Louisiana – he would be arrested immediately.

18. Those allegations were false.

19. Plaintiff informed the police officer that Defendant has serious addictions issues and that if Plaintiff left his mother in Defendant's care, his mother would likely die. The officer responded that he had "other things to do," and that Plaintiff should "take it to family court."

20. In total, Defendant made 10 false allegations to the Wilton Police Department from 2015 to May 2017, including:
    a. Two allegations of real estate embezzlement and false representation;
    b. One allegation of monetary embezzlement and bank fraud;
    c. One allegation of assault;
    d. One allegation of attempted strangulation;
    e. One allegation of theft of jewelry (valued at over $20,000);
    f. One allegation of theft of silverware (valued at over $3,000);
    g. Two allegations of attempted homicide, in connection with which she alleged Plaintiff

      had a pistol, even though Plantiff has never owned or even fired a gun;

  h. One allegation of theft of a watch (valued at over $5,000)

21. Convinced that Defendant was mistreating their mother, Plaintiff hired a private investigator ("PI"). The PI documented that, over the following four months, Defendant disconnected their mother's land phone lines, disconnected the Samsung nanny cams, and cut off their mother's GPS-enabled fall detector. Because their mother did not know how to use a cell phone she had no contact with the family or the outside world once the landlines were cut off.

22. During this time, Defendant routinely moved their mother around to avoid efforts by the family to find them and ensure that the mother was safe. On numerous occasions, police were dispatched to the house where Defendant and the mother were staying.

23. On August 23, 2016, the Wilton Police found the mother on a basement floor on a mattress covered in urine and feces, with bed sores, bruises and suffering from malnutrition. According to the police report, Defendant had a strong odor of alcohol. Nonetheless, after a brief stay in the hospital, the mother was placed back into Defendant's care.

24. On September 2, 2016, the officer who had discovered the mother in the basement made a call to social services and learned that there had been three other referrals made about the mother since Defendant had started caring for her.

25. On September 14, 2016, Defendant contacted the Wilton Police Department and claimed that someone at the hospital had abused the mother because she had come home with sores, lesions, and bruises. According to the police report, the hospital confirmed that the mother had arrived at their facility with those injuries.

26. On October 24, 2016, a private investigator that Plaintiff hired called the Danbury house to check up on the mother. Defendant answered the phone and, pretending to be the mother, went on a verbal tirade about Plaintiff, accusing him of wire fraud, and involvement in a criminal enterprise with a phone company called Frontier. Defendant also stated that Plaintiff had

"beaten people up in the past" and that he was currently being investigated by both the Wilton PD and the FBI.

27. The following day the investigator called the house again to check up on the mother. The mother answered the phone, but the phone line was quickly disconnected. The investigator called the Danbury PD and asked them to conduct a welfare check on the mother. However, when the Danbury PD showed up to the house, the house was dark and no one answered the door. It was later discovered that Defendant had been hiding the mother inside the house.

28. On November 9, 2016, the mother – while in Defendant's care – died. Defendant did not inform the family; she told the funeral home director that she was the only living family. Defendant had the mother's remains cremated and has refused to tell the rest of the family where she located them.

29. Prior to her death, the mother's was not suffering from any major physical ailments.

30. Between June 2016 and the mother's death on November 9, 2016, Defendant had depleted the mother's account, withdrawing over $30,000, using a facsimile signature stamp while withdrawing funds from mother's account through December 6, 2016. This occurred prior to the estate being legally probated.

31. Prior to the mother's death, Adrienne manipulated her into disinheriting all of her children with the exception of Adrienne, "for reasons only known to myself [the mother.]" It was subsequently verified that when the mother signed the will in July 2016, she had not been of sound mind. The validity of the will is currently being contested in probate proceedings.

## COUNT I
## DEFAMATION

32. The allegations in paragraphs 1-31 are hereby incorporated by reference.

33. Defendant made numerous false allegations against Plaintiff to social services and to the Wilton Police Department, including allegations of theft, assault, and mistreatment of an elder.

34. Defendant made these allegations with actual malice and complete disregard for the truth. The primary purpose of the allegations was to cover up for the fact that she was abusing the mother and attempting to enrich herself by stealing her property and embezzling her funds

35. At least one of these investigations led police to bar Plaintiff from entering his home.

36. These allegations have cause Plaintiff – someone who has never had so much as a traffic ticket – severe reputational suffering in the community.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

37. The allegations in paragraphs 1-36 are hereby incorporated by reference.

38. Defendant made numerous false allegations against Plaintiff to social services and to the Wilton Police Department, including allegations that he mistreated and abused his mother, that he threatened and attempted to strangle the Defendant and that he was stealing from his mother.

39. This extreme and outrageous conduct led the Wilton Police Department to threaten arrest if Plaintiff returned to his home of 40 years. *See Kelly v. McIntosh, Superior Court*, judicial district of Waterbury, Docket No. CV 07 5004381 (January 18, 2008, Upson, J.) (false allegation to police that plaintiff stole a car and used illegal drugs was "outrageous" enough to sustain a claim for intentional infliction of emotional distress); *Bozelko v. Milici*, No. NNHCV115033844S, 2013 Conn. Super. LEXIS 531, at *48 (Super. Ct. Mar. 11, 2013) (citing cases holding that filing false police reports creates a cause of action for intentional infliction of emotional distress).

40. During this time, Defendant neglected and mistreated their mother, which eventually resulted in her death.

41. As a result of these false allegations and the mother's deterioration at Defendant's hands, Plaintiff has suffered severe emotional distress.

## COUNT III
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

42. The allegations in paragraphs 1-41 are hereby incorporated by reference.

43. Defendant made numerous false allegations against Plaintiff to social services and to the Wilton Police Department, including allegations that he mistreated and abuse his mother, that he threatened to shoot and attempted to strangle the Defendant, and that he was stealing from his mother.

44. This extreme and outrageous conduct led the Wilton Police Department to threaten arrest if Plaintiff returned to his home of 40 years.

45. During this time, Defendant neglected and mistreated their mother, which eventually resulted in her death.

46. Defendant should have known that her behavior carried an unreasonable risk that Plaintiff would suffer extreme emotional distress.

## COUNT IV
## MALICIOUS PROSECUTION

47. The allegations in paragraphs 1-46 are hereby incorporated by reference.

48. Over the past three years, Defendant has filed numerous criminal complaints against Plaintiff with the Wilton Police Department.

49. Each of those complaints was false. Defendant manufactured the claims against Plaintiff to distract from her repeated acts of theft and embezzlement, and to inhibit Plaintiff's ability to prevent with her attempts to manipulate the mother and empty her estate of funds and property.

50. Each of the complaints were eventually thrown out or resolved in Plaintiff's favor.

51. As a result of these complaints, Plaintiff has suffered extreme emotional distress and reputational injuries.

## COUNT V
## WRONGFUL DEATH

52. The allegations in paragraphs 1-51 are hereby incorporated by reference.

53. Defendant repeatedly neglected to provide the most basic care for the mother during the five months she was in her care. Defendant was discovered to have left her mother on a basement floor, on a mattress soaked in urine and feces. According to doctors' reports, shortly before her death, the mother presented with bruises and lesions consistent with neglect and abuse.

54. Defendant was the sole caretaker of the mother prior to her death.

55. At the time of her death the, the mother had not been diagnosed with any life-threatening illnesses.

56. Defendant's abuse and neglect of the mother was the proximate cause of her death.

57. After he death, Defendant attempted to cover up her responsibility for the mother's death by neglecting to inform the other family members and by quickly having the mother's remains cremated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court for the following relief:

1. Enter judgment against Defendant in favor of Plaintiff on each count;

2. Permanently enjoin and restrain Defendant from making defamatory remarks about Plaintiff and filing false complaints against him with law enforcement authorities;

3. Order Defendant to pay damages in the amount of $1,500,000;

4. Order Defendant to reimburse Plaintiff for attorney's fees and costs;

5. Order whatever relief the Court considers just and proper.

Dated: June 21st 2018

                                        I declare under penalty of perjury that the above allegations are true and correct:

                                        JEFFREY MILLER, *pro se*
                                        201 St. Charles Avenue-Ste#114
                                        New Orleans, LA 70170-0114